```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA

                         Alexandria Division


AEROTEK, INC.,                    )
                                  )
     Plaintiff,                   )
                                  )
         v.                       )      1:05cv1080 (JCC)
                                  )
TYONEK NATIVE CORPORATION,        )
TYONEK MANUFACTURING, LLC,        )
                                  )
     Defendants.                  )
```

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants' Motion to Dismiss for failure to state a claim upon which relief may be granted. For the reasons stated below, the Court will grant in part and deny in part Defendants' Motion.

### I. Background

Plaintiff, Aerotek, Inc. ("Aerotek"), is a recruiting and staffing firm serving commercial and government customers. Defendants Tyonek Native Corporation ("Tyonek") and Tyonek Manufacturing LLC ("TMLLC") (collectively "TNC") provide defense manufacturing, aircraft logistics, and other services to government agencies. TNC participates in the United States Small Business Administration's 8(a) Business Development program and therefore is eligible to receive sole-source contracts from the United States government.

Aerotek provided aircraft maintenance services to Navy divisions from 2001 to 2004.  The Aerotek employees performing such services signed an Employment Agreement preventing them from working for another company at the same Navy facility for a period of six months after leaving Aerotek's employment.

In August of 2004, Aerotek and TNC entered into a "Teaming Agreement" for the purposes of jointly pursuing federal government contract opportunities.  The language most pertinent to this Motion reads:

> If Tyonek is selected by the Government as the prime contractor for the Contract, it will enter into an exclusive subcontract with Aerotek . . . for such services as to be mutually determined at the time the proposal is submitted and prior to award.  The parties hereby agree to negotiate in good faith as to the specific terms and conditions of the subcontract Agreement, subject to the agreed to objective that Tyonek will maintain 51% of the applicable Contract costs . . . and Aerotek . . . will maintain 49% of the applicable Contract costs.

(Plf. Opp. Ex. 1).  When the Navy became interested in hiring small businesses in 2004, Aerotek suggested TNC's services.  On November 30, 2004, the Navy hired TNC on a short-term basis so that it could supervise TNC for the possibility of longer employment.  Aerotek alleges that this short-term purchase order was made with the understanding that Aerotek would continue to perform the required services via subcontract.  Aerotek provided such services to TNC through December 2004.

In January 2005, the Navy awarded TNC a longer-term letter contract - a written preliminary contract that allows for services to begin while specific terms and conditions are still under negotiation.  When the Navy requested that TNC actually employ the persons responsible for executing TNC's contractual obligations, TNC and Aerotek agreed that Aerotek would transfer seventy-two employees to TNC's payroll, rather than simply lease the employees to TNC.  Aerotek claims it agreed to this transfer because it expected to continue performing as a subcontractor for the balance of TNC's contract term.

In response to TNC's negotiations with the Navy in July of 2005, TNC and Aerotek's relationship began to erode.  TNC allegedly proposed to significantly reduce the amount of compensation that Aerotek would receive under the contract and it demanded for the first time a Certificate of Current Cost or Pricing Data.  In early August, TNC requested that Aerotek submit its final proposal for the Navy contract, and upon submission, TNC allegedly declared the end to negotiations and ordered that Aerotek stop performing work under the Navy contract.  TNC distributed employment applications to the Aerotek employees working under the Navy contract and allegedly instructed that they should report the following work-day as TNC employees or else they would lose their jobs.

Plaintiff filed a Complaint on September 13, 2005. It asserts six counts: breach of express contract, breach of implied-in-fact contract, tortious interference with contract rights and contract expectancy, tortious interference with prospective economic advantage, unjust enrichment, and quantum meruit. On October 10, 2005, Defendants filed a Motion to Dismiss Counts I, III, IV, and V of the Complaint as to Tyonek, and all of the counts as to TMLLC. This Motion is currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which

require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.

### III. Analysis

Tyonek moves the Court to dismiss Aerotek's claims for breach of express contract, tortious interference with contract rights and contract expectancy, tortious interference with prospective economic advantage, and unjust enrichment. TMLLC moves the Court to dismiss all claims against it because Aerotek allegedly asserts no claims attributable to TMLLC.

Tyonek argues that the claim for breach of the express contract should be dismissed because this claim is based on the Teaming Agreement, which Tyonek claims is merely an agreement to agree. As merely an agreement to agree, Tyonek concludes the agreement is unenforceable. However, the very authority which Tyonek cites in its Motion undermines its argument. *Valdez Fisheries Dev. Assoc., Inc. v. Alaska Pipeline Serv. Co.* states that "an agreement to negotiate is *not* an agreement to agree." 45 P.3d 657, 667 (Alaska 2002) (emphasis added). Importantly, the court continues noting that it "will enforce agreements to negotiate." *Id.* As Count I is premised on TNC's refusal to negotiate and the agreement to negotiate is unambiguously a provision of the express contract, Count I must not be dismissed as a matter of law.

Count III claims tortious interference with contract rights and contract expectancy as to the Employment Agreements that Aerotek had with its employees. Aerotek alleges that TNC "intentionally induced Aerotek's employees to breach their Employment Agreements and sign on as employees of TNC," which "prevented Aerotek from realizing its reasonable expectation of continued performance . . . at the Navy facilities." (Plf's Opp. 8-9). Tyonek responds merely by claiming that Aerotek had no reasonable expectation of continued performance at the Navy facilities because it had no contract entitling it to perform those services. However, this explanation, even if valid, is not a sufficient reason to dismiss the claim.

The elements of intentional interference are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Chaves v. Johnson*, 230 Va. 112, 120 (1985). Plaintiff is not required to prove malice in such a claim. *Id*. at 121.

Aerotek alleges that Tyonek knew of the valid Employment Agreements, that Tyonek induced the employees to breach the Agreement, and that this resulted in a loss to Aerotek

of the future service of those employees.  Aerotek's allegations suffice to meet the elements of tortious interference.  Any voluntary transfer of the employees does not justify a later inducement to breach the Employment Agreement.  Therefore, Count III need not be dismissed.

    Tyonek contests Count IV of Aerotek's Complaint, which asserts a claim for tortious interference with prospective economic advantage.  Essentially this claim is similar to Count III, but requires an additional showing of use of "improper methods" by the Defendants.  Improper methods can include duress, unethical conduct, overreaching, sharp dealing, and other competitive conduct "below the behavior of fair men similarly situated".  *Duggin v. Adams*, 360 234 Va. 221, 227-228 (1987) (quoting *Light v. Transport Insurance Company*, 469 S.W.2d 433, 439 (Tex. Civ. App. 1971)).  The improper conduct of TNC that Aerotek alleges includes abandoning negotiations with Aerotek, issuing Aerotek a Stop Work Order, and instructing Aerotek employees to report to work on the following work day as TNC employees or lose their jobs.  In response, Tyonek asserts its rights to issue a Stop Work Order and end negotiations.  However, an action may be technically legal yet still be classified as improper.  The allegations, when taken as alleged, could be deemed improper.  At this early stage in the case, the Court is unable to determine beyond doubt that Plaintiff has failed to

prove that these actions were improper.  Thus the Court will deny Tyonek's Motion as to Count IV.

Finally, Tyonek seeks to dismiss Aerotek's unjust enrichment claim, Count V.  A claim for unjust enrichment requires proof of "(1) the plaintiff's conferring of a benefit on the defendant, (2) the defendant's knowledge of the conferring of the benefit, and (3) the defendant's acceptance or retention of the benefit under circumstances that 'render it inequitable for the defendant to retain the benefit without paying for its value.'" *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 537 (E.D. Va. 2005) (quoting *Nossen v. Hoy*, 750 F.Supp. 740, 744-45 (E.D. Va. 1990)).  The benefit Aerotek is claiming pertains to the seventy-two employees it transferred to TNC. Aerotek claims that inequitable circumstances resulted from TNC's breaking off negotiations, issuing a Stop Work Order, and converting the Aerotek employees.  Tyonek's response rests on the fact that Aerotek's transfer of the employees was voluntary. Yet, the voluntary nature of the benefit conferral does not undermine an unjust enrichment claim.  It is the retention of the benefit rendering inequitable circumstances that Aerotek alleges in Count V of the Complaint.  Furthermore, Tyonek's argument that the Teaming Agreement is unenforceable has no effect on this Count given that an unjust enrichment claim arises when there is no contractual relationship.  Plaintiff has stated a claim on

which relief can be granted for Count V, and therefore it must not be dismissed.

In addition to seeking dismissal of the four above Counts as to Tyonek, Defendants also seek a complete dismissal as to TMLLC for failure to state a claim for which relief may be granted.  TMLLC alleges that Aerotek asserts no claims attributable to it in the Complaint.  Aerotek asserts that Tyonek is wholly owned and completely controlled by TMLLC.  Aerotek also asserts that Tyonek and TMLLC appear to act in concert through the same individuals and share a principal place of business.

Because Aerotek asserts no claims attributable to TMLLC in the Complaint, any liability would be based on the theory of piercing the corporate veil.  To establish a case for piercing the corporate veil, a plaintiff must prove two elements: (1) "the corporate entity was the alter ego, alias, stooge, or dummy of the individuals sought to be charged personally" and (2) "the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime."  *Perpetual Real Estate Servs., Inc. v. Michaelson Props. Inc.*, 974 F.2d 545, 548 (4th Cir. 1992) (quoting *Cheatle v. Rudd's Swimming Pool Supply Co.*, 360 S.E.2d 828, 831 (Va. 1987)).  Aerotek fails to sufficiently allege the elements of this standard.  Simply stating that Tyonek is wholly owned and completely controlled by TMLLC is not enough.  There is no allegation of a wrong, fraud, or crime that TMLLC is

attempting to disguise by use of Tyonek. Simply, Aerotek has failed to provide adequate allegations to keep TMLLC as a defendant in this case.

### IV. Conclusion

For the reasons stated above, the Court will grant in part and deny in part Defendants' Motion to Dismiss. An appropriate Order will issue.

```
December_8_, 2005              _____/s/_____
Alexandria, Virginia                     James C. Cacheris
                               UNITED STATES DISTRICT COURT JUDGE
```