```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division


AEROTEK, INC.,                    )
                                  )
     Plaintiff,                   )
                                  )
        v.                        )     1:05cv1080 (JCC)
                                  )
TYONEK NATIVE CORPORATION,        )
TYONEK MANUFACTURING, LLC,        )
                                  )
     Defendants.                  )
```

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants' motion for summary judgment as to Counts I, II (in part), III, IV, V, VI, and VII of Aerotek, Inc.'s First Amended Complaint and on Defendants' motion in limine. For the reasons stated below, the Court will deny Defendants' motion for summary judgment and deny Defendants' motion in limine.

### I. Background

Plaintiff, Aerotek, Inc. ("Aerotek"), is a recruiting and staffing firm serving commercial and government customers. Defendants Tyonek Native Corporation ("Tyonek") and Tyonek Manufacturing LLC ("TMLLC") (collectively "TNC") provide defense manufacturing, aircraft logistics, and other services to government agencies. TNC participates in the United States Small Business Administration's 8(a) Business Development program and

therefore is eligible to receive sole-source contracts from the United States government.

Aerotek provided aircraft maintenance services to Navy divisions from 2001 to 2004. The Aerotek employees performing such services signed an Employment Agreement preventing them from working for another company at the same Navy facility for a period of six months after leaving Aerotek's employment.

In August of 2004, Aerotek and Tyonek entered into a "Teaming Agreement" for the purposes of jointly pursuing federal government contract opportunities. When the Navy became interested in hiring small businesses in 2004, Aerotek allegedly suggested Tyonek's services. On November 30, 2004, the Navy allegedly hired Tyonek on a short-term basis so that it could supervise it for the possibility of longer employment. Aerotek claims that Tyonek chose to use TMLLC as the contracting party under the purchase order. Aerotek alleges that this short-term purchase order was made with the understanding that Aerotek would continue to perform the required services via subcontract. Aerotek provided such services at the Navy facilities, under subcontract to TMLLC, through December 2004.

In January 2005, the Navy awarded TMLLC a longer-term letter contract - a written preliminary contract that allows for services to begin while specific terms and conditions are still under negotiation. When the Navy requested that TMLLC actually

employ the persons responsible for executing TMLLC's contractual obligations, Tyonek and Aerotek allegedly agreed that Aerotek would transfer seventy-two Aerotek employees to TMLLC's payroll, rather than simply leasing the employees to TMLLC.  Aerotek claims it agreed to this transfer because it expected to continue performing as a subcontractor for the balance of TMLLC's contract term.

In response to TNC's negotiations with the Navy in July of 2005, TNC and Aerotek's relationship began to erode.  TNC allegedly proposed to significantly reduce the amount of compensation that Aerotek would receive under the contract and demanded for the first time a Certificate of Current Cost or Pricing Data.  TMLLC claims that it was unaware that Aerotek was granted an exemption by the Navy's Contracting Officer from the requirement of submitting this information.  In early August, TNC requested that Aerotek submit its final proposal for the Navy contract, and upon submission, TNC allegedly declared the end to negotiations and ordered that Aerotek stop performing work under the Navy contract.  This letter was printed on Tynoek stationery signed by the "President" of "Tyonek Solutions," also known as TMLLC.  TNC distributed employment applications to the Aerotek employees working under the Navy contract and allegedly instructed that they should report the following work-day as TMLLC employees or else they would lose their jobs.

Plaintiff filed a Complaint on September 13, 2005.  It asserted six counts: breach of express contract, breach of implied-in-fact contract, tortious interference with contract rights and contract expectancy, tortious interference with prospective economic advantage, unjust enrichment, and quantum meruit.  On October 10, 2005, Defendants filed a motion to dismiss Counts I, III, IV, and V of the Complaint as to Tyonek, and all of the counts as to TMLLC.  On December 8, 2005, this Court denied the motion to dismiss as to Tynoek, but granted the motion to dismiss for all the counts as to TMLLC.  Tyonek then answered the Complaint on December 20, 2005.  On March 23, 2006, Plaintiff filed a motion for reconsideration of the December 8, 2005 Order, for leave to add a defendant, and for leave to amend the Complaint.[1]  The motion was granted on April 12, 2006, the same day in which Aerotek filed an amended Complaint.

On June 16, 2006, Defendants filed a motion for summary judgment as to Counts I, II (in part), III, IV, V, VI, and VII of Aerotek, Inc.'s First Amended Complaint.  On June 26, 2006, Defendants filed a motion in limine to preclude Plaintiff from introducing certain evidence at trial.  These motions are currently before the Court.

---

[1] Although the Motion was styled as one for reconsideration, leave to add a defendant, and leave to amend, the Plaintiff argued the motion completely through the lens of one for leave to amend.  The facts pertaining to the motion changed since the Court made its December 8, 2005 determination, so there was nothing to reconsider about the previous Order.  Thus, this Court reviewed the motion as one for leave to amend.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party opposing summary judgment may not rest upon mere allegations or denials. A "mere scintilla" of evidence is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 248-52. Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III. Analysis

Defendants' motion for summary judgment addresses Counts I, II (in part), III, IV, V, VI, and VII of Aerotek's First Amended Complaint. Count I alleges that Tyonek breached the Teaming Agreement in a variety of ways, namely that it 1) failed to use Aerotek on an exclusive subcontract basis for the awarded contract with the Navy, 2) failed to continue to exert all reasonable efforts toward these objectives throughout any negotiations concerning any prime contract, 3) failed to negotiate in good faith as to the specific terms and conditions of the subcontract agreement, 4) failed to enter into a subcontract that reflects the intent of the Teaming Agreement, 5) canceled Aerotek's "non-cancelable" subcontract, and 6) breached the Teaming Agreement's implied covenant of good faith and fair dealing. Tyonek grounds its argument for summary judgment for all of the assertions in Count I, save the last one concerning

the implied covenant, in the claim that it was not a party to the prime contract with the Navy.  Tyonek states that it cannot be held liable for any claims arising from the contract to which TMLLC was a party.

Aerotek, however, disagrees with this characterization and notes that there is a fundamental disagreement as to material facts that precludes the entry of summary judgment as to Count I.  Aerotek highlights that "the parties' dispute regarding how the Navy work came to TMLLC – whether Tyonek obtained the work and delegated it to TMLLC as its 'vehicle' for government contracting, or whether TMLLC obtained the work 'without any involvement whatsoever of Tyonek' - is material to determining Tyonek's obligations under the Teaming Agreement and whether Tyonek breached it."  (Plf.'s Opp. 14.)  The Court agrees. Tyonek cannot simply rely on the fact that TMLLC was the party to the contract, while ignoring any obligations leading up to that eventuality.  Since the facts are in dispute as to Tyonek's involvement in how the prime contract was structured, summary judgment is inappropriate.

If the Court rejects the argument that TMLLC's name on the prime contract completely absolves Tyonek of liability, as it does, Tyonek argues in the alternative that even if TMLLC is Tyonek's "designated subsidiary," Tyonek is still entitled to summary judgment on Count I.  Tyonek supports this claim by

suggesting that the Teaming Agreement was superseded by TMLLC's award of subcontracts to Aerotek. The Court does not accept this explanation, however. As Plaintiff points out, the language of the Teaming Agreement states that "[t]he terms and conditions of any subcontract executed by all parties . . . shall supersede all rights and obligations of the parties under this Agreement . . . ." The plain language instructs that all parties must execute a subcontract to override the Teaming Agreement. The facts as presented by Defendants do not suggest that there was such an occurrence, especially given their insistence that Tyonek was not a party to the prime contract.

  Finally, Tyonek also suggests that Plaintiff's allegation regarding the breach of the Teaming Agreement's implied covenant of good faith and fair dealing can also be determined as a matter of law. Tyonek argues that under Alaska law, which governs in this case, an action for breach of an implied covenant of good faith and fair dealing can only arise in situations where a defendant breaches a duty imposed by law independent of the contract. It cites *Alaska Pacific Assurance Co. v. Collins*, 794 P.2d 936 (Alaska 1990), in support. Since Aerotek makes no allegations that Tyonek violated a duty imposed by law independent of the Teaming Agreement, Tynoek claims that the motion for summary judgment as to this aspect of Count I should also be granted. However, it is erroneous to claim that

Aerotek's allegations are exclusively limited to the Teaming Agreement. In fact, a significant portion of Aerotek's claims are independent of the contract; thus, Tyonek's argument has no merit.

Count II of the Amended Complaint states a claim for breach of express or implied subcontract by TMLLC due to failing to pay Aerotek the full value of its services, stealing Aerotek's employees, breaching the subcontract's implied covenant of good faith and fair dealing, and canceling the "non-cancelable" subcontract. TMLLC moves for summary judgment as to all but the first aspect of the count. In response to the claim regarding the stealing of Aerotek employees, TMLLC simply states that it merely hired a number of Aerotek's ex-employees. TMLLC claims that Aerotek can point to no area of the agreement that precludes the hiring of another party's ex-employees. In terms of the alleged breach of the subcontract's covenant of good faith and fair dealing, TMLLC notes that the claim is meritless because no evidence exists that TMLLC ever committed to negotiate a long term contract with Aerotek. Finally, as for cancelling the subcontract, TMLLC states that it was not a party to the Teaming Agreement that contained the "non-cancelable" language and that the parties had no other binding contract with such a provision.

The Court acknowledges the responses of Aerotek to these various claims and finds some merit in each of them. The

record in these areas is far from clear.  The intertwined actions of the parties in this case complicate the record and make it difficult for the Court to discern which facts belong to which party.  As a result, the Court is precluded from granting summary judgment because Defendants have failed to show an absence of disputed material facts.

Count III of the Amended Complaint states a claim for tortious interference with employment contracts by both Tyonek and TMLLC.  Defendants state that Tyonek had no involvement in this matter whatsoever and that TMLLC is protected by the "at will" status of the formerly-Aerotek employees.  Since there were no improper methods used by TMLLC, they state that summary judgment is appropriate.  *See Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396 (1985).  Plaintiff responds by challenging Defendants' claim that it is possible to view Tyonek and TMLLC entirely separately.  Additionally, Aerotek purports that the propriety or impropriety of the Defendants' actions is a central factual dispute in the case.  Aerotek alleges that Defendants were fully aware of the employees' non-compete agreements and that Defendants intentionally misinformed Aerotek employees about Aerotek's future employment decisions.  The Court agrees with Aerotek that the record is not void of factual disputes as to this claim.  There is a suggestion that Tyonek's name was used in communication with the employees, and Aerotek

raises facts that, if true, would support the claims made in Count III. Thus, here again, the parties' dispute over the material facts of the case preclude summary judgment.

Count IV seeks relief from both Tyonek and TMLLC for tortious interference with economic advantage. Defendants assert that summary judgment is appropriate as to this count because there was no expectancy with a third party as is required by this cause of action and there were no improper motives on behalf of the Defendants. As the Court has already found that there are material facts in dispute about whether the Defendants engaged in improper methods, the only question that remains is whether there was a third party to which there was an expectancy of relationship. While Defendants look to parties other than themselves, Plaintiff claims that each Defendant is a third party to the other. Although each party has engaged in convenient joining and separating of the Defendants for the benefit of argument, the Court recognizes that at the summary judgment stage, Aerotek's showing is sufficient to establish the existence of each element essential to its case. Thus, here, too, summary judgment is inappropriate.

Counts V, VI, and VII allege unjust enrichment, quantum meruit, and misappropriation of business opportunity, respectively. Defendants claim that because a claim of unjust enrichment is quasi-contractual in nature, it may not be raised

where there is an express contract.  Additionally, they claim that since quantum meruit states the same cause of action as a claim for unjust enrichment, summary judgment as to Count VI should likewise be granted.

Plaintiff responds by clarifying that Aerotek's breach of contract claim alleges that it was improperly forced out of the Navy contract in contravention of the Teaming Agreement and Defendants' obligations arising from Tyonek's and Aerotek's agreement to split the Navy work on a 51-49% ratio.  The unjust enrichment claim is based on the allegations regarding the stolen employees and is thus completely separate from the breach of contract claim.  Additionally, the quantum meruit claim is based on the value of the services Aerotek performed rather than seeking compensation for the employees wrongfully taken and retained.

The Court will allow both of the claims to remain. Grounding the unjust enrichment claim in allegations about stolen employees seems quite similar to allegations made in Count II, yet it is possible to make the allegations distinct, and therefore the Court will not preclude the Plaintiff from attempting to do so.  Likewise, the quantum meruit claim also seems based on the same underlying assertions as the unjust enrichment claim; but, again, Plaintiff has raised a distinction sufficient enough to survive summary judgment.

Finally, Defendants allege that Count VII, the misappropriation of business opportunity by Tyonek and TMLLC claim, is merely a recitation of the tortious interference with economic advantage claim.  Plaintiff replies with another nuanced argument that this claim is grounded in the misappropriation of the business opportunity to provide aircraft maintenance services to the Navy rather than the wrongful acts of interference as a third party to the relationship between Aerotek and the other Defendant.  Again, the differences are subtle, but the Court is inclined to allow Plaintiff to move forward on the claims via separate counts when viewed in the light most favorable to the non-movant.

Defendants have also filed a motion in limine asking this Court to preclude Plaintiff from introducing evidence at trial of the following nature: 1) evidence of the amount of damages Aerotek alleges it sustained individually under all counts of its Complaint; 2) evidence of the amount of severe damage, lost profits, and consequential damages that Aerotek alleges it sustained under Counts I and II of its Complaint; 3) evidence of Aerotek's total damages for all counts of its Complaint; 4) evidence that Tyonek's failure to pay invoices under the Teaming Agreement, or the express or implied-in-fact subcontract, establish breaches of those agreements; 5) evidence of the amount Aerotek alleges it is owed for its services

rendered under Counts V and VI of its Complaint; and 6) evidence that Aerotek suffered any damages by its alleged loss of the services of its employees at the hands of TMLLC because Aerotek never employed the employees it alleges TMLLC stole.

      Defendants ground a majority of their motion relating to damage allocation on Aerotek's alleged failure to comply with the Court's Order of May 8, 2006.  The Order required Aerotek to produce evidence during discovery of its damages.  This Order was in response to Defendants' dissatisfaction with the outcome of their document production requests, which led to a subsequent motion to compel.  Most of Aerotek's damages were produced by Michael Spears, who allegedly could not articulate the damages on a count by count basis.  Because of this, Defendants ask this Court to preclude Aerotek from introducing evidence to establish any damages at trial.

      In response, Aerotek claims that in breach of contract claims the standard is "an intelligent and probable estimate of the damages sustained." *D.C. McClain, Inc. v. Arlington County*, 249 Va. 131, 143 (1995).  In light of this standard, Plaintiff purports that the testimony of Spears and the other supporting documents were sufficient to put Defendants on notice of Plaintiff's damages and afford them an opportunity to properly prepare for trial.

While the Court emphasizes the importance of honesty in the discovery process, Defendants' motion seems unnecessarily contentious.  In its opposition, Plaintiff outlines in bulleted format the nature and amount of Aerotek's damages and stresses that just because an element of damages applies to more than one count, it does not suggest an effort to collect multiple recoveries.  Additionally, the numbers that Spears produced were specific and certainly the type to give Defendants an intelligent and probable estimate of the damages sustained.  The relief that Defendants seek, precluding Plaintiff from introducing evidence of damages, is an extreme response to an expert witness who was unable to parse the damage numbers by count.  Thus, in conclusion, the Court finds the motion in limine to be an unfair attempt to manipulate the evidence admissible in trial without a proper basis.  The law does not require the specificity of damages that Defendants seem to desire.  Defendants' dissatisfaction with the material produced during the discovery process is not an appropriate ground for precluding the introduction of a significant portion of Plaintiff's evidence.

Finally, and surprisingly briefly, Defendants attempt to preclude Plaintiff from introducing evidence at trial that Aerotek employed the employees that TMLLC allegedly wrongfully hired away.  Defendants claim that Aerotek lacks standing to complain about the allegedly wrongful hiring because of

Employment Agreements produced that listed Onsite Aviation, LLC or Aerotek Aviation, LLC as the employer rather than Aerotek. Aerotek explains that the listing is a result of internal organization of the company, but insists that Aerotek is a real party in interest. Aerotek also notes the curious timing of the Defendants' filing. The Court is also struck by the nature of Defendants' request. The relief they seek is substantial, yet buried at the end of a lengthy motion in limine. As Aerotek is clearly a party in interest, there are no grounds for precluding the evidence. Any additional steps that need to be taken in this regard will be evaluated upon the development of facts at trial.

### IV. Conclusion

For the reasons stated above, the Court will deny Defendants' motion for summary judgment and deny Defendants' motion in limine. An appropriate Order will issue.


July _27, 2006                          _____/s/_____
Alexandria, Virginia                              James C. Cacheris
                                        UNITED STATES DISTRICT COURT JUDGE